# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**STEPHANIE VASQUEZ,**
**ACTING AS PERSONAL**
**REPRESENTATIVEOF THE ESTATE**
**OF MICHAEL SWISHER**
         Plaintiff,


-vs.-


**UNITED STATES AMERICA, and**
**JOHN D. DINGELL VA MEDICAL CENER,**
         Defendants.

_____/

**MUSSIN & SCANLAND, PLLC**
**SCOTT P. MUSSIN (P66748)**
**JERARD M. SCANLAND (P74992)**
Attorneys for Plaintiff
13351 Reeck Court, Suite 5
Southgate, Michigan 48195
Phone: (734)-282-6037
Fax: (734)-447-5853
JScanland@milawoffices.com
_____/

## <u>COMPLAINT AND JURY DEMAND</u>

There is no other pending or resolved action
within the jurisdiction of the civil division
of the Federal District Court involving the
parties who are the subject of the complaint.

/s/_____JERARD M. SCANLAND_____
**JERARD M. SCANLAND**
**Attorney For Plaintiff**

**COMES NOW THE** Plaintiff, **STEPHANIE VASQUEZ acting as personal representative of the estate of MICAHEL SWISHER,** through her attorneys the law firm of MUSSIN & SCANLAND, PLLC and by attorney Jerard M. Scanland and in support of Plaintiff's Complaint And Jury Demand, states the following:

1.  Plaintiff's claims arise out of a failure to properly diagnose and/or delay the diagnoses of lung cancer of Veteran, Michael Swisher.

2.  The amount in controversy exceeds $75,000.00, excluding costs, interest and attorney fees.

3.  Decedent, Michael Swisher, (hereafter "Plaintiff") was a resident of Michigan and resided within the Eastern District of Michigan.

4.  The Defendant, the Department of Veterans Affairs is an authorized agency of the United States of America.

5.  The Defendant, the John D. Dingell VA Medical Center, conducts business in the City of Detroit, County of Wayne and State of Michigan.

6.  The events out of which this controversy arose occurred in the Eastern District of Michigan.

7.  This Court has jurisdiction over this matter pursuant to 28 USC § 1331 and §1343.

8.  An administrative Tort Claim was timely filed with the Defendant's Department of Veteran's Affairs and the agency rejected the claim on or about September 22, 2019.  Pursuant to 28 U.S.C. 1346(b) and 2675, a tort claim administratively denied may be presented to a United States District Court for judicial consideration within six months of the denial.

## BACKGROUND FACTS

9.  The Decedent/Plaintiff, Michael Swisher, was a resident of River Rouge, Wayne

County, Michigan and at all times pertinent hereto, was entitled to receive and did receive medical care from the Defendant's Department of Veteran's Affairs concerning a diagnoses of lung cancer.

10. The Defendant's Department of Veteran's Affairs is an authorized agency of the United States of America.

11. The Plaintiff's family/primary care physician breached the standard of care by failing and/or delaying the diagnosis of Plaintiff's nodules.

12. A CT scan was performed on Mr. Swisher's lungs by agents and employees of Defendant, Department of Veterans Affairs, prior to the CT scan being performed on Mr. Swisher in December 14, 2017. The CT scan performed on December 14, 2017 showed some improvement in his lung function yet, there remained a focal abnormal soft tissue density within the left upper lung.

13. The agent/employee of Defendant, Department of Veterans Affairs, who performed the abovementioned CT scan failed to properly diagnosis the mass found in Mr. Swisher's lung. In fact, the doctor felt the mass could be complex bullous disease. It was noted, a PET CT would be helpful for further assessment, although no PET CT had been performed. Additionally, the progress notes provide, the LUL mass in Mr. Swisher's lung is suspicious for lung cancer yet, there was no diagnostic testing performed.

14. In July of 2018, a PET scan was finally performed by an agent/employee of Defendant, Department of Veterans Affairs.  It was noted there was a necrotic 6.8 cm mass within the left upper lobe consistent with primary underlying neoplasm with mediastinal lymphadenopathy consistent with metastatic disease.

15.  It was further noted, mild uptake within the left adrenal gland is nonspecific, but is

viewed with suspicion for metastatic disease, recommend attention at follow-up. Moreover, it was noted there was a non-FDG avid 0.5 cm nodule within the right middle lobe and an LUL mass that was suspicious for lung cancer.

16. Doctor Hammoud, an agent/employee of Defendant, Department of Veterans Affairs, advised Mr. Swisher was not a surgical candidate due to the size of the lung mass.  Most notably, the PET scan was performed almost a year after Mr. Swisher began presenting with signs of lung cancer.

17. On September 18th, 2018, Mr. Swisher presented for a neurology outpatient consult with Doctor Humaira Fahim an agent/employee of Defendant, Department of Veterans Affairs. At this time Mr. Swisher was experiencing headaches.  The headaches were chronic and severe. It was noted in his medical records at this time, Mr. Swisher was suffering from COPD, hearing impairment, and left lung lesion.

18. It was at this time, Mr. Swisher reported suffering from headaches for several months and at some point, the headaches became constant.  Again, no PET scan or biopsy had been performed, by any agent/employee of Defendant, Department of Veterans Affairs, in an effort to determine the reason why Mr. Swisher had a lesion on his lung, which was growing in size.

19. It was around this very same time, Mr. Swisher presented to Doctor Kim Jyung, an agent/employee of Defendant, Department of Veterans Affairs and Doctor Richard Pearlman also an agent/employee of Defendant, Department of Veterans Affairs to discuss possible treatment for lung cancer.

20. The Doctors of Defendant. Department of Veterans Affairs, advised Mr. Swisher, he did not have a diagnosis of lung cancer, however, the likely treatment for lung cancer was in fact discussed, including chemotherapy and radiation.  To date, there was no pathology to review.

21. A chest x-ray performed on October 5, 2018, revealed a stable chest, with no pneumonia, however, it did reveal a left upper lobe collapse and bilateral pulmonary nodules.

22. According to the report, Mr. Swisher had eliminated all oral intake of food except for water, iced tea and mashed potatoes.  It was noted he had an inability to eat soft moist foods such as pasta or solid foods such as sandwiches or meat.  It was noted he suffered from occasional coughing with liquids and frequent sensation of food sticking in his throat between the cricopharyngeal region and base of tongue.

23. The findings revealed profound dysphagia with silent aspiration and delayed weak nonproductive cough.  Generalized weakness of oral pharyngeal musculature including reduced base of tongue retraction without contract to posterior pharyngeal wall, posterior epiglottic movement without consistent inversion. Compromised airway protection due to weakness and left vocal fold paralysis.

24. Mr. Swisher reported difficulties swallowing for approximately one month prior to the lung biopsy performed on October 12, 2018 by Doctor Thomas Jetmore.  On October 12, 2018. A lung biopsy was performed by an agent/employee of Defendant, Department of Veterans Affairs. The biopsy revealed a lesion which was PET-avid, and the plan was for a chemoradiation as it appeared as if the lesion was stage three.

25. On or about October 18, 2018, Mr. Swisher a fifty-eight (58) year-old veteran was referred to Doctor Arthur Knack, an agent/employee of Defendant, Department of Veterans Affairs for a dysphagia evaluation secondary to reported dysphagia to solids and dysphonia on October 12, 2018 at which time his was suffering from left vocal fold paralysis and pooled secretions were noted during flexible laryngoscopy.

26. Radiation oncology progress note reported a left lung lesion increasing in size and

another lesion in right upper lobe with stage IV diagnosis. It was at this time, the cancer had spread from the left to the right lobe of the lung.

27. October 19, 2019, Mr. Swisher presented for a follow-up visit. At this appointment the last CT of the chest showed a focal abnormality in the LUL which was concerning for malignancy. An agent/employee of Defendant, Department of Veterans Affairs evaluated the PET/CT in July 12, 2018. The PET scan showed a PET avid lesion in the LUL measuring approximately 6.8 centimeters in the largest dimension with associated PET avid mediastinal adenopathy.

28. An MRI of the brain was performed on August 20, 2018 for the purposes of ruling out metastatic disease, and it was found to be negative. A biopsy was performed, but it was positive only for necrosis.  Per the notes generated by the radiation oncologists, agent/employee of Defendant, Department of Veterans Affairs, on October 18, 2018, the left lung lesion biopsy performed on October 4, 2018 was non diagnostic.

29. It was at this time, Mr. Swisher, was stage four, however, there was no tissue diagnosis.

30. October 23, 2018, Mr. Swisher did not appear for a scheduled appointment, however, the notes from the appointment indicate Mr. Swisher had a LUL mass and pet positive with lung biopsy negative, which was highly suspicious for cancer.

31. Shortly thereafter, Mr. Swisher passed away.

32. The standard of care required a family/primary care physician to properly diagnose and follow up the Plaintiff who was suffering with lung nodules.

33. As a direct and proximate result of the failure to diagnose and follow-up with Mr. Swisher, Mr. Swisher continued to suffer mightily. By way of example, Mr. Swisher, a 58-year-

old, suffered constant and severe headaches, the inability to swallow food, the inability to eat

solid foods, a compromised airway protection due to weakness and left vocal fold paralysis,

generalized weakness of oral pharyngeal musculature including reduced base of tongue

retraction without contract to posterior pharyngeal wall, finally Mr. Swisher eventually passed

away.

## COUNT-I
## NEGLIGENCE AS TO ALL DEFENDANTS

34. The Plaintiff hereby restates, realleges, and incorporates by reference each and every

allegation as set forth above and further states in the alternative, the following:

35. At all times pertinent to this Complaint, Defendant, by and through its agents,

servants, and or employees owed Plaintiff a duty to maintain the standard of care and treatment

of its peers within the professional community of family/primary care physicians.

36. The Defendant, by and through its agents, servants and or employees, was negligent,

inter alia, in the following ways:

    a. A reasonable and prudent licensed and practicing medical doctor who holds himself out as a family/primary care physician when encountering a patient such as Michael Swisher had a duty to take all measures necessary to ensure Mr. Swisher receives a proper diagnosis and is followed-up care, and to properly code medical charts following the biopsy in an effort to ensure they receive proper attention from an oncologist more than a year prior to Mr. Swisher's death who could properly diagnose Mr. Swisher's lung cancer;

    b. A reasonable and prudent licensed and practicing medical doctor who holds himself out as being a family/primary care physician when encountering a patient such as Mr. Swisher, had a duty to provide proper follow-up care and diagnoses of lung nodules and to properly code medical charts following the biopsy in an effort to ensure they receive proper attention from an oncologist more than a year prior to Mr. Swisher's death who could properly diagnose Mr. Swisher's lung cancer;

    c. A reasonable and prudent licensed family/primary care physician when encountering a patient such as Mr. Michael Swisher had a duty to properly perform proper follow-up care and diagnoses of lung nodules following a

biopsy on Mr. Swisher's lung and to properly perform code medical charts following the biopsy in an effort to ensure they receive proper attention from an oncologist more than a year prior to Mr. Swisher's death who could properly diagnose Mr. Swisher's lung cancer;

d.  A reasonable and prudent licensed and practicing medical doctor licensed as a family/primary care physician when encountering a patient such as Mr. Swisher, has a duty to refrain from delaying or failing to diagnose lung nodules and lung cancer in a patient when a diagnoses is not provided for more than a year;

e.  A reasonable and prudent license and practicing family/primary care physician when encountering a patient such as Mr. Swisher, had a duty to properly code Mr. Swisher's medical charts following the biopsy in an effort to ensure they receive proper attention from an oncologist who could properly diagnose Mr. Swisher's lung cancer and had a duty to provide proper follow-up care and provide an accurate diagnoses of Mr. Swisher's nodules;

f.  A reasonable and prudent licensed and practicing family/primary care physician when encountering a patient such as Mr. Swisher, had a duty to consult with or refer the patient to an appropriate medical specialist to determine the proper mode and/or method of treatment for the patient.

g.  Defendant, by and through its agent servants and/or employees, failed to do these things and its failure to do so is below the acceptable standard of care owed to Decedent.

37. As a result of the above referenced breaches of the standard of care, Mr. Swisher suffered significant injury including but not limited to, constant and severe headaches, the inability to swallow food, the inability to eat solid foods, a compromised airway protection due to weakness and left vocal fold paralysis, generalized weakness of oral pharyngeal musculature including reduced base of tongue retraction without contract to posterior pharyngeal wall, and eventually death.

38. Had the Defendant, its agents, servants, and employees, followed the standard of care, Mr. Swisher's cancer and nodule diagnoses would not have been delayed, Mr. Swisher would have received proper follow-up care, and Mr. Swisher's medical chart would have been coded properly, which in turn would have prevented Mr. Swisher from receiving the delayed diagnoses.

39. As a direct and proximate result of the negligent and tortuous acts of defendants agents, servants, and/or employees, Decedent, Michael Swisher, suffered constant and severe headaches, the inability to swallow food, the inability to eat solid foods, a compromised airway protection due to weakness and left vocal fold paralysis, generalized weakness of oral pharyngeal musculature including reduced base of tongue retraction without contract to posterior pharyngeal wall, and eventually death.

**WHEREFORE,** Plaintiff requests this Honorable Court grant her a judgment in the amount of $10,000.000.00 excluding costs, interest and/or attorney fees.

Dated: December 16, 2019                     Respectfully Submitted,

                                             **MUSSIN & SCANLAND, PLLC**

                                             By:/s/JERARD M. SCANLAND_____
                                                **JERARD M. SCANLAND (P74992)**
                                                Attorney for Plaintiff Acting As Personal
                                                Representative of The Estate of Michael
                                                Swisher
                                                13351 Reeck Court, Suite 5
                                                Southgate, Michigan 48195
                                                Phone: (734)-282-6037
                                                Fax: (734)-447-5853
                                                JScanland@milawoffices.com

## **JURY DEMAND**

The Plaintiff does hereby make a demand for a trial by jury.

Dated: December 16, 2019

/s/JERARD M. SCANLAND

**JERARD M. SCANLAND (P74992)**
Attorney for Plaintiff Acting As Personal
Representative of The Estate of Michael
Swisher
13351 Reeck Court, Suite 5
Southgate, Michigan 48195
Phone: (734)-282-6037
Fax: (734)-447-5853
JScanland@milawoffices.com